# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, et
al.,

                Debtors.[1]

PROMESA
Title III

Case No. 17-3283 (LTS)
(Jointly Administered)

-----------------------------------------------------------x

RENÉ PINTO LUGO, ET AL, VAMOS,
MOVIMIENTO DE CONCENTRACIÓN
CIUDADANA INC., (VAMOS); UNIÓN DE
EMPLEADOS DE OFICINA Y PROFESIONALES
DE LA AUTORIDAD DE EDIFICIOS PÚBLICOS,
(UEOGAEP); UNIÓN INSULAR DE
TRABAJADORES INDUSTRIALES Y
CONSTRUCCIONES ELÉCTRICAS INC.,
(UITICE); UNIÓN INDEPENDIENTE DE
EMPLEADOS DE LAAUTORIDAD
DEACUEDUCTOS YALCANTARILLADOS,
(UIA); UNIÓN DEEMPLEADOS
DEOFICINACOMERCIO YRAMASANEXAS,
PUERTOS, (UEOCRA); UNIÓN DE EMPLEADOS
DEL BANCO DE LA VIVIENDA, (UEBV); UNIÓN
DE EMPLEADOS PROFESIONALES
INDEPENDIENTES, (UEPI); UNIÓN NACIONAL
DE EDUCADORES Y TRABAJADORES DE LA
EDUCACIÓN, (UNETE); AND ASOCIACION DE
INSPECTORES DE JUEGOS DE AZAR, (AIJA);
ASOCIACIÓN DE JUBILADOS DE LA

Adv. Proc. No. 18-041-LTS in 17
BK 3283-LTS

---

[1] The Debtors in the underlying Title III Case, along with each Debtor's respective Title III case number listed as bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS). (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

AUTORIDAD DE ENERGÍA ELÉCTRICA
HEREINAFTER (AJAEE)

Plaintiffs

v.

THE GOVERNMENT OF THE UNITED STATES
OF AMERICA, (USA); FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO (THE FOMB); AND
RICARDO ROSSELLÓ NEVARES IN HIS
OFFICIAL CAPACITY.

Defendants

-----------------------------------------------------------------x

FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO
(THE FOMB)

Movant

v.

RENÉ PINTO LUGO, ET AL, VAMOS,
MOVIMIENTO DE CONCENTRACIÓN
CIUDADANA INC., (VAMOS); UNIÓN DE
EMPLEADOS DE OFICINA Y
PROFESIONALES DE LA AUTORIDAD DE
EDIFICIOS PÚBLICOS, (UEOGAEP); UNIÓN
INSULAR DE TRABAJADORES
INDUSTRIALES Y CONSTRUCCIONES
ELÉCTRICAS INC., (UITICE); UNIÓN
INDEPENDIENTE DE EMPLEADOS DE
LAAUTORIDAD DEACUEDUCTOS
YALCANTARILLADOS, (UIA); UNIÓN
DEEMPLEADOS DEOFICINACOMERCIO
YRAMASANEXAS, PUERTOS, (UEOCRA);
UNIÓN DE EMPLEADOS DEL BANCO DE LA
VIVIENDA, (UEBV); UNIÓN DE EMPLEADOS
PROFESIONALES INDEPENDIENTES, (UEPI);
UNIÓN NACIONAL DE EDUCADORES Y
TRABAJADORES DE LA EDUCACIÓN,
(UNETE); AND ASOCIACIÓN DE
INSPECTORES DE JUEGOS DE AZAR, (AIJA);
ASOCIACIÓN DE JUBILADOS DE LA
AUTORIDAD DE ENERGÍA ELÉCTRICA
HEREINAFTER (AJAEE)

Respondents

-----------------------------------------------------------------x

## REPLY MEMORANDUM IN SUPPORT OF FINANCIAL OVERSIGHT <u>AND MANAGEMENT BOARD MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................................2

ARGUMENT ..........................................................................................................................8

I.      PLAINTIFFS FAIL TO DEMONSTRATE THEY HAVE STANDING TO
        BRING THIS ACTION. ...............................................................................................8

II.     PLAINTIFFS FAIL TO REBUT THE OVERSIGHT BOARD'S
        ARGUMENTS THAT PROMESA § 105 BARS THE RELIEF SOUGHT
        BY THE FIRST, SECOND, AND THIRD CAUSES OF ACTION. ...............................10

III.    CONTRARY TO PLAINTIFFS' ASSERTIONS, CONGRESS HAS
        PLENARY POWERS OVER THE TERRITORIES (CAUSES OF ACTION
        1, 2, AND 3)...............................................................................................................11

IV.     PLAINTIFFS' ARGUMENTS THAT THE INTERNATIONAL TREATIES
        CREATE A PRIVATE RIGHT OF ACTION OR BINDING LEGAL
        OBLIGATIONS FAIL (CAUSE OF ACTION 1)............................................................13

V.      PLAINTIFFS DO NOT SHOW THE AMENDED COMPLAINT ALLEGES
        FACTS SUFFICIENT TO STATE A CLAIM UNDER THE
        DECLARATION OF INDEPENDENCE OR UNDER THE FIRST, FIFTH,
        OR FOURTEENTH AMENDMENTS TO THE UNITED STATES
        CONSTITUTION (CAUSES OF ACTION 2 AND 3). .....................................................16

        A.      Plaintiffs' Arguments the Declaration of Independence Can Serve as the
                Basis for a Claim Are Unavailing. ..................................................................16

        B.      Plaintiffs' Assertions They Have Sufficiently Alleged a First Amendment
                Violation Are Likewise Unavailing. ................................................................16

        C.      Plaintiffs Have Not Adequately Pled a Claim Under the Due Process or
                Equal Protection Clauses. ...............................................................................17

VI.     PLAINTIFFS' ATTEMPTS TO DEMONSTRATE THE AMENDED
        COMPLAINT STATES A CLAIM BASED ON A CONFLICT OF
        INTEREST OR A DUTY TO AUDIT PUERTO RICO'S DEBT FAIL. ..........................19

        A.      Plaintiffs Have Not Alleged a Conflict of Interest................................................19

        B.      Plaintiffs Likewise Have Not Alleged a Duty to Conduct an Audit......................21

VII.    PLAINTIFFS FAIL TO SHOW THE SIXTH CAUSE OF ACTION
        SHOULD NOT BE DISMISSED FOR LACK OF SUBJECT-MATTER
        JURISDICTION OR FAILURE TO STATE A CLAIM. ...................................................23

CONCLUSION......................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Ambac Assurance Corp. v. Commonwealth of Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
297 F. Supp. 3d 269 (D.P.R. 2018) ................................................................................. 23

*Ariz. Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011) ............................................................................................................ 8

*Aurelius Investments, LLC, et al. v. Commonwealth of Puerto Rico*,
915 F.3d 838 (1st Cir. 2019) .................................................................................... 2, 4, 11

*Caperton v. A.T. Massey Coal Co.*,
556 U.S. 868 (2009) ........................................................................................... 2, 5, 18, 19

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
172 F.3d 104 (1st Cir. 1999) .............................................................................................. 8

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ............................................................................................................ 8

*Igartua v. United States (Igartua IV)*,
626 F.3d 592 (1st Cir. 2010) ............................................................................................ 13

*Igartua-De La Rosa v. United States (Igartua III)*,
417 F.3d 145 (1st Cir. 2005) ...................................................................................... 12, 13

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
318 F. Supp. 3d 537 (D.P.R. 2018) ............................................................................. 4, 11

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
190 F. Supp. 2d 936 (S.D. Tex. 2001) ............................................................................ 14

*Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*,
136 U.S. 1 (1890) ......................................................................................................... 4, 11

*Medellin v. Texas*,
552 U.S. 491 (2008) ................................................................................................... 12, 13

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974) ............................................................................................................ 8

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) .......................................................................................................... 13

*United States v. Li,*
    206 F.3d 56 (1st Cir. 2000) ............................................................................12

*UTIER v. PREPA,*
    Adv. Proc. No. 17-ap-228 (D.P.R. 2017).........................................................9

**STATUTES**

11 U.S.C. § 1123(a)(5) ................................................................................7, 23

PROMESA § 101(e)(5)(B) ..........................................................................5, 18

PROMESA § 105................................................................................2, 3, 9, 10

PROMESA § 106(e) ...............................................................................7, 22, 23

PROMESA § 201 ...................................................................................7, 22

PROMESA § 210................................................................................................5

PROMESA § 301(a) ...............................................................................7, 23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(B)(1) ...................................................................................1

Fed. R. Civ. P. 12(B)(6) ...................................................................................1

P.R. Const., art. VI, § 19 ............................................................................7, 23

U.S. Const., art. IV, § 3, cl. 2 ...........................................................................1

To the Honorable United States District Court Judge Laura Taylor Swain and the Honorable United States Magistrate Judge Judith Gail Dein:

Defendant the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") respectfully submits this reply memorandum in further support of its *Motion to Dismiss Plaintiffs' First Amended Adversary Complaint Pursuant to Fed. R. Civ. P. 12(B)(1) and 12(B)(6)* [ECF. No. 36] (the "Motion to Dismiss" or "Mot.").

## PRELIMINARY STATEMENT

At the core of this adversary proceeding is Plaintiffs' dissatisfaction with the political relationship between the Commonwealth and the United States. In particular, Plaintiffs fundamentally disagree with Congress's authority to enact PROMESA and, in particular, its creation of the Oversight Board to address the Commonwealth's fiscal crisis within the framework of that statute. On that basis, Plaintiffs ask this Court to strike down Titles I and II of PROMESA, or in the alternative, to halt all progress on the development of fiscal plans to restore fiscal responsibility and the restructuring of overwhelming debt. In their opposition to defendants' motions to dismiss (the "Opposition" or "Op."), Plaintiffs make three primary arguments against dismissal, each of which fails: (1) Article IV, § 3, Clause 2 of the United States Constitution (the "Territories Clause") does not grant Congress plenary power over the territories to enact Titles I and II of PROMESA and to establish an Oversight Board; (2) the Oversight Board's exercise of authority pursuant to the statute violates various international agreements and the United States Constitution because the statute was enacted (and the work of the Oversight Board proceeds) without direct participation of, or oversight by, the residents of Puerto Rico; and (3) for these reasons, all actions taken by the Oversight Board should be deemed null and void.

2

Since Plaintiffs filed their Opposition, the First Circuit issued its decision on the Appointment Clause litigation in which Plaintiffs did not intervene. *Aurelius Invs., LLC v. Commonwealth of Puerto Rico*, No. 18-1671 (1st Cir. 2018). Accordingly, the issues of whether the Oversight Board is validly authorized to exercise its powers under PROMESA and whether its actions to date should be deemed null and void are already decided pending potential *certiorari* proceedings. The appellate court ruled the Oversight Board members require the advice and consent of the Senate, but that their actions, at least until May 16, 2019, are valid and not null and void. *Aurelius Invs., LLC v. Commonwealth of Puerto Rico*, 915 F.3d 838, 363 (1st Cir. 2019).

The overwhelming majority of Plaintiffs' 74-page Opposition reflects their philosophical disagreement about representative government and is laden with policy arguments largely related to non-justiciable claims, but offers little if any support for Plaintiffs' Causes of Action. As the Oversight Board established in its Motion to Dismiss, each Cause of Action in the Amended Complaint should be dismissed on multiple grounds. Plaintiffs' arguments in opposition do not change the outcome.

First, the Opposition engages in only a superficial analysis of the threshold legal issues: standing and PROMESA § 105. As stated in the first argument in the Motion to Dismiss, Plaintiffs lack standing to pursue this action. Plaintiffs argue in response on two pages beginning on page 63 of the Opposition they have satisfied standing requirements because they challenge the constitutionality of a federal statute and allege violations of the United States Constitution (First Amendment specifically). That argument misses the point. Plaintiffs' claim of standing on behalf of government employees, pensioners, creditors, businesses, university students, and labor unions is reducible to a claim of injury allegedly resulting from the Oversight Board's restructuring of

3

public debt absent accountability to, or the participation of, Puerto Rico's residents. Plaintiffs, however, do not allege a specific harm suffered by any named Plaintiff (bondholder, community organization, or union) or any of the aforementioned groups they purport to represent and, given their primary grievances, fail to allege any injury traceable to the Oversight Board. The generalized allegations assert only abstract injuries that would be common to all Puerto Rico residents and thus fail to sufficiently allege the concrete, particularized harm required to establish standing.

Plaintiffs' response to the Oversight Board's second argument—that PROMESA § 105 bars the First, Second, and Third Causes of Action—is even more cursory. In two brief paragraphs beginning on page 65 of the Opposition, Plaintiffs assert § 105 is unconstitutional because the creation of the Oversight Board was unconstitutional and because they are not pursuing liability against the Oversight Board. The premise that the creation of the Oversight Board was unconstitutional fails, as set forth below. In addition, the argument that Plaintiffs are not pursuing liability against the Oversight Board is contradicted by their requests for relief which, among other things, request the nullification of the Oversight Board's actions and the return of all monies paid to the Oversight Board.

Plaintiffs' principal argument against dismissal is the Oversight Board's understanding of Congress's authority to regulate the territories is wrong because the term "plenary" does not appear in the text of the Constitution. This argument is moot in light of the First Circuit's decision. But even if not moot, it is wrong. In essence, Plaintiffs argue the Oversight Board's actions are null and void because Congress lacked authority to enact Titles I and II of PROMESA. This argument is directly contrary to Supreme Court precedent, as this Court has recognized, that Congress

4

derives plenary power over the territories from the Territories Clause and that its authority is sufficient to create territorial entities with delegated and broad authority. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 318 F. Supp. 3d 537, 549-50 (D.P.R. 2018), *rev'd in part,* 915 F.3d 838 (1st Cir. 2019) (citing *Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*, 136 U.S. 1, 42 (1890)), and recently affirmed by the First Circuit's decision in *Aurelius*.

Plaintiffs' next argument—that this Court should treat international charters and treaties as self-evident and presume they are self-executing and have the force of domestic law even without express Congressional authorization—is devoid of any citation and is contrary to the law. United States Supreme Court and First Circuit precedent is clear on two critical points which Plaintiffs fail to rebut: (1) international agreements generally do not create binding domestic legal obligations or private rights of action enforceable in federal court unless Congress has enacted implementing legislation or the agreements contain language expressing an intention to be self-executing *and* have been ratified by Congress to have that effect; and (2) the particular international agreements Plaintiffs allege have been violated in this case (the Charter of the United Nations, the Declaration of Human Rights of the United Nations, and the International Covenant on Civil and Political Rights) do not create law enforceable in domestic courts.

Similarly, Plaintiffs assert without authority that a court may give the Declaration of Independence the force of law because of the number of times courts have referred to it when interpreting provisions of the Constitution. Plaintiffs' argument again misses the point. The Declaration of Independence, regardless of its use as an interpretive tool by some courts, cannot form the basis of a claim because the Declaration itself is not a law. It is a declaration. Plaintiffs' Opposition does not provide, because it cannot, a legal argument to rebut this fact. Plaintiffs

5

otherwise rehash the summary legal conclusions and unsupported assertions made in the Amended

Complaint—that the Oversight Board has violated their rights to vote, to self-determination, and

to due process and equal protection under the First, Fifth, and Fourteenth Amendments to the

United States Constitution—and still fail to identify a protected interest belonging to Plaintiffs that

has been denied to them by action of the Oversight Board.

As such, all Plaintiffs' arguments against dismissal of the First, Second, and Third Causes

of Action fail.

Plaintiffs' arguments against the Dismissal of the Fourth and Sixth Causes of Action fare

no better.[2]  The Fourth Cause of Action seeks a court order removing two Oversight Board

members for alleged conflicts of interest and alleges a breach of fiduciary duty by the Oversight

Board for its purported failure to perform an audit of Puerto Rico's debt.  (As a practical matter,

the Oversight Board did review the Commonwealth's debt and is objecting to the debts it believes

are invalid.  Case No. 17 BK 3283-LTS; Dkt. No. 4784).  Plaintiffs disagree with, but do not rebut,

the Oversight Board's arguments that this cause of action (1) is not within the subject-matter

jurisdiction of the Court because PROMESA § 101(e)(5)(B) grants removal power exclusively to

the President of the United States and (2) fails to state a claim because Plaintiffs do not allege any

facts supporting an actual conflict of interest or inappropriate actions by the two Oversight Board

---

[2] In response to the United States' motion to dismiss Plaintiffs' Fifth Cause of Action, Plaintiffs argue the United States must assume Puerto Rico's public debt notwithstanding PROMESA § 210's declaration that the full faith and credit of the United States is not pledged to any debts issued by the Commonwealth because (1) the United States owes fiduciary duties to the Commonwealth; and (2) the United States created the Commonwealth as a federal government agency and is therefore responsible for its debts.  Op. at 54-63.  The Oversight Board defers to the United States to respond further to these arguments.

6

members.  To support their allegation that two of the Oversight Board's members suffer disabling

conflicts of interest violating Plaintiffs' due process rights, Plaintiffs cite only *Caperton v. A.T.*

*Massey Coal Co.*, 556 U.S. 868 (2009), and do so for the proposition that the appearance of

impropriety alone results in a violation of the due process of law.  But the exceptional

circumstances of that case—in which one party was responsible for significant contributions to the

election campaign of the judge presiding over the case—are a far cry from Plaintiffs' allegations

here, which simply observe that two Oversight Board members were once affiliated with large

Puerto Rico financial institutions.  That allegation is not sufficient to state a claim based on

conflicts of interest.  Indeed, it shows the two members have important knowledge about the

Commonwealth's finances that aid in the carrying out of the Oversight Board's duties.

Plaintiffs' arguments with respect to the Oversight Board's alleged failure to conduct a

proper audit likewise fail.  First and foremost, Plaintiffs admit that PROMESA does not impose

an audit duty and acknowledge that the Oversight Board had in fact retained an independent

investigator that published a report of findings on August 20, 2018.  Plaintiffs attempt to revive

their claim by taking issue with the scope of the investigation and whether it qualifies as a "forensic

audit" even though there is no duty to conduct any audit.  In addition to trading in semantics,

Plaintiffs simply parrot the conclusory allegations in the Amended Complaint asserting the

investigation was limited in scope and not sufficiently transparent and fail to explain why prior

statements by former Governors of Puerto Rico reflecting their views on the causes of Puerto

Rico's debt crisis would have been material to the independent investigation that was conducted.

As explained in the Oversight Board's Motion to Dismiss, the audit was comprehensive and

included both publically available interim reports and public participation in the process.  It led to

7

the Oversight Board's filing of claim objections.  Plaintiffs' dissatisfaction with the outcome of the investigation does not give rise to a legal claim.

With respect to Plaintiffs' Sixth Cause of Action, which invokes Article VI, § 19 of the Puerto Rico Constitution and seeks to preclude privatization and certain disposition of PREPA and UPR assets, Plaintiffs simply ignore the Oversight Board's arguments that this cause of action fails to state a claim because (1) the debtor has authority to sell assets pursuant to Bankruptcy Code § 1123(a)(5) (incorporated by PROMESA § 301(a)); (2) PREPA's privatization has not been fully negotiated, finalized, or implemented yet, and accordingly, the claim is not ripe; and (3) presuming ripeness, Article VI, § 19 of the Puerto Rico Constitution does not provide a private right of action for Plaintiffs to assert such a claim.  Plaintiffs now principally contend PREPA and UPR are essential services and the Oversight Board has improperly certified a fiscal plan that fails to ensure these essential services receive adequate funding as required by PROMESA § 201.  This argument utterly ignores this Court's and the First Circuit's rulings that this Court lacks subject-matter jurisdiction, pursuant to PROMESA § 106(e), to review the Oversight Board's certification determinations.

Put simply, Plaintiffs have not rebutted the Oversight Board's arguments, and accordingly, the Amended Complaint should be dismissed.

## <u>ARGUMENT</u>

## I.   PLAINTIFFS FAIL TO DEMONSTRATE THEY HAVE STANDING TO BRING THIS ACTION.

Plaintiffs' Opposition superficially contends in two pages they have standing because they have properly challenged the constitutionality of a federal statute and alleged constitutional violations, and in particular, violation of their First Amendment rights.  *See* Op. at 63-65.  In

8

leveling those constitutional challenges, Plaintiffs purport to assert the interests of Puerto Rico's residents, including "government employees, bond holders, members of credit unions, retired government employees, pension holders, shop owners, public school students, labor unions, etc." Op. at 20.  According to Plaintiffs, the Oversight Board's decisions have harmed Puerto Rico's residents because they suffer injuries in the form of "a direct or indirect impact over the salaries, property, pension benefits, employment conditions and essential services" resulting from the Oversight Board's restructuring of public debt "without any accountability" or the participation of Puerto Rico's residents.  *Id.* at 20-21.

These assertions are not a defense to dismissal.  As the First Circuit has explained, "a party [asserting] standing must have an interest distinct from that of every other citizen or taxpayer." *See Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 476-79 (1982)).  The abstract injuries Plaintiffs claim—that the Oversight Board's certifications of fiscal plans and budgets have directly and indirectly impacted the financial interests of Puerto Rico residents, as well as government services they enjoy—effectively assert due process claims on behalf of all residents of Puerto Rico.  These allegations fail to demonstrate standing because the "generalized interest of all citizens in constitutional governance," standing alone, is an "abstract injury" insufficient to confer standing.  *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974); *see Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011); *DaimlerChrysler v. Cuno*, 547 U.S. 332, 344-45 (2006) (citing *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)) (holding that allegation that plaintiffs "suffer[] in some indefinite way in common with people generally" fails to articulate the concrete,

9

particularized injury required to demonstrate standing).  A generalized, nebulous allegation that

the Oversight Board in some way violates the due process rights of all of Puerto Rico's residents

is "too abstract to constitute a 'case or controversy' appropriate for judicial resolution."

*Schlesinger*, 418 U.S. at 227.  Accordingly, because Plaintiffs have failed to assert the concrete,

particularized injuries required to establish standing, this Court lacks subject-matter jurisdiction

over their claims.[3]  Significantly, this is not only a governing legal principle.  It guards against

Plaintiffs tampering with and misrepresenting the rights of Puerto Rico residents who disagree

with Plaintiffs and who never authorized Plaintiffs to represent them.

## II.  PLAINTIFFS FAIL TO REBUT THE OVERSIGHT BOARD'S ARGUMENTS THAT PROMESA § 105 BARS THE RELIEF SOUGHT BY THE FIRST, SECOND, AND THIRD CAUSES OF ACTION.

Plaintiffs cursorily contend in two brief paragraphs beginning on page 65 of the Opposition

that PROMESA § 105 does not bar the relief sought by the First, Second, and Third Causes of

Action for two reasons, neither of which is persuasive.

---

[3] Moreover, Plaintiffs' Opposition does not address the Oversight Board's contentions that, *inter alia*, (1) Plaintiff Pinto-Lugo lacks standing as a bondholder because he has failed to allege an injury that is specific, fairly traceable to the Oversight Board, and capable of redress by the dismantling of PROMESA; (2) VAMOS lacks organizational standing because it has failed to allege how the purported violations of law have affected its organizational interest in community organizing and to establish any connection between its purpose and the alleged constitutional violations, as is required for organizational standing and standing on behalf of its members (*id.* at 8-13), or to allege facts demonstrating Plaintiffs have suffered any concrete injury traceable to actions of the Oversight Board (*id.* at 10-11); and (3) unlike the plaintiffs in *UTIER v. PREPA*, Adv. Proc. No. 17-ap-228 (D.P.R. 2017) ("*UTIER*"), the Union Plaintiffs here do not allege the Oversight Board, by adopting specific legislation as part of the relevant fiscal plans, has taken any action that alters, impairs, or nullifies their rights under their collective bargaining agreements ("CBAs").  These arguments remain unrebutted.

10

First, Plaintiffs insist that § 105 is unconstitutional since the Oversight Board itself is unconstitutional.  This circular argument depends on a finding that the Oversight Board as an entity is unconstitutional.  As explained below, Plaintiffs have not, and cannot, show that the Oversight Board, as created and established pursuant to Titles I and II of PROMESA, is unconstitutional, and accordingly, they cannot show that § 105 is unconstitutional on that ground alone.

Second, Plaintiffs recognize that "Section 105 of the Act exempts the FOMB, its members, and its employees from any liability for any obligation of or claim against the Oversight Board or its members or employees or the territorial government resulting from actions taken to carry out the Act" (Op. at 19), but contend that § 105 is "irrelevant" (*id.* at 66) because none of their claims seek to impose liability on the Oversight Board or its members.  This is wrong.  Plaintiffs' First, Second, and Third Causes of Action all seek orders that "the members of the Board, the Board itself and all of its employees and contractors [] return to the Government of Puerto Rico any and all monies paid by the government of Puerto Rico pursuant to the terms of the PROMESA Act." *See* Amended Compl. ¶¶ V.A. 18, pg. 64; V.B.22, pg. 71; V.C.14, pg. 75.  Because, contrary to Plaintiffs' assertions, each of these causes of action unequivocally seeks to impose liabilities on the Oversight Board and its members, they are barred by PROMESA § 105.

## III.   CONTRARY TO PLAINTIFFS' ASSERTIONS, CONGRESS HAS PLENARY POWERS OVER THE TERRITORIES (CAUSES OF ACTION 1, 2, AND 3).

Plaintiffs' Opposition contends the plenary powers doctrine lacks grounding in the United States Constitution and that Congress's power over the territories is limited by the fact that Congress may make only "needful Rules and Regulations" for the territories.  Op. at 4-13.  Accordingly, Plaintiffs contend their First, Second, and Third Causes of Action—which effectively challenge Congress's authority to enact Titles I and II of PROMESA and create the

11

Oversight Board, as well as the Oversight Board's authority to act pursuant to PROMESA—cannot be dismissed on the grounds that Congress has plenary powers over the territories.

Plaintiffs' argument simply ignores well-established precedent that the Territories Clause grants Congress general and plenary power authority over the territories. *Late Corp. of the Church of Jesus Christ of Latter-Day Saints*, 136 U.S. at 42 (explaining that Congress's plenary power over the territories arises from "the power given by the Constitution to make all needful rules and regulations respecting the Territory or other property belonging to the United States.").  As this Court recently observed, long-standing precedent also holds that Congress's plenary powers pursuant to the Territories Clause permit it to create territorial entities with delegated and broad authority. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 318 F. Supp. 3d at 549-50, (citing *District of Columbia v. John R. Thompson Co.*, 346 U.S. 100 (1953)).  The First Circuit likewise reaffirmed that "Article IV conveys to Congress greater power to rule and regulate within a territory than it can bring to bear within the fifty states." *Aurelius,* 915 F.3d at 850.  That power includes the authority to "delegate to territorial governments the power to enact rules and regulations governing territorial affairs," *id.* at 28 (citing *Thompson*, 346 U.S. at 106; *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321-23 (1937); *Simms v. Simms*, 175 U.S. 162, 168 (1899)), including the delegation of rule-making authority, *id.*  Plaintiffs offer no authority for the Court to depart from long-standing precedent regarding Congress's plenary authority over the territories and find Titles I and II of PROMESA unconstitutional.[4]

---

[4] In addition to reaffirming Congress's authority pursuant to the Territories Clause, the First Circuit also made clear that "this case presents no claim that the substance of PROMESA's numerous rules and regulations exceed that reach." *Aurelius,* 915 F.3d at 851.

The Opposition also fails to address the Oversight Board's argument that Plaintiffs lack standing to bring these generalized claims as against the Oversight Board because the alleged harm—dissatisfaction with Puerto Rico's status as a territory of the United States—would not be redressed by the relief Plaintiffs request. *See* Mot. at 17 n.9.  Indeed, the Opposition only further underscores that Plaintiffs' principal problem is with the Commonwealth's relationship with the United States, which would not be affected by a declaration that the Oversight Board is unconstitutional.

## IV.  PLAINTIFFS' ARGUMENTS THAT THE INTERNATIONAL TREATIES CREATE A PRIVATE RIGHT OF ACTION OR BINDING LEGAL OBLIGATIONS FAIL (CAUSE OF ACTION 1).

Plaintiffs allege their First Cause of Action states a claim for violation of the Charter of the United Nations (the "UN Charter"), the Declaration of Human Rights of the United Nations (the "UNDHR"), and the International Covenant on Civil and Political Rights (the "ICCPR" and collectively with the UN Charter and the UNDHR, the "Treaties") because the Treaties are enforceable in United States courts under the doctrine of estoppel, the doctrine of abuse of rights, and the covenant of good faith and fair dealing.  Op. at 29-53.  These arguments lack any legal support.

As an initial matter, Plaintiffs do not address the Oversight Board's argument that controlling law holds none of the Treaties are enforceable in domestic courts.  The law is clear: treaties create binding domestic legal obligations *only* if they are self-executing or if Congress has enacted implementing legislation.  *See Medellin v. Texas*, 552 U.S. 491, 505 (2008) ("[T]reaties . . . are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms.") (citation omitted);

13

*Igartua-De La Rosa v. United States* (*Igartua III*), 417 F.3d 145, 149 (1st Cir. 2005) ("Treaties are made between states . . . and citizens do not automatically have a right to sue upon them."); *United States v. Li*, 206 F.3d 56, 60-61 (1st Cir. 2000) ("[T]reaties do not generally create rights that are privately enforceable in the federal courts."). Here, the First Circuit has held that none of the Treaties create private rights of action because none of the Treaties are self-executing and Congress has not enacted any legislation implementing them. *Medellin*, 552 U.S. at 506 (holding that the UN Charter does not create binding federal law); *Igartua III*, 417 F.3d at 149-50 (affirming dismissal because the UNDHR "creates aspirational goals but not legal obligations" and the ICCPR "does not "comprise[] domestic law of the United States"); *Igartua v. United States (Igartua IV)*, 626 F.3d 592, 602-03 (1st Cir. 2010) (stating that the ICCPR and the UNDHR "do not constitute domestic law because they are not self-executing and Congress has not enacted implementing legislation") (citation omitted); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (same).  Plaintiffs do not (and cannot) explain why this binding legal authority does not require dismissal of their claim here.[5]

Plaintiffs' reliance on three additional theories—estoppel, the abuse-of-rights doctrine, and the covenant of good faith and fair dealing—to support the enforceability of the Treaties in domestic courts is similarly unavailing.  First, the Opposition points to no case holding estoppel

---

[5] Plaintiffs likewise cite no law for their assertion that the Treaties create binding domestic legal obligations because "treaties may be, and presumably should be, self-executing." Op. at 47.  On the contrary, that position is flatly contradicted by the Supreme Court's "distinction between treaties that automatically have effect as domestic law, and those that—while they constitute international law commitments—do not by themselves function as binding federal law." *Medellin*, 552 U.S. at 504.  In any event, Plaintiffs purport to divine an intention to create a private individual right from the texts of the Treaties.  Op. at 49-53.  But Plaintiffs do not explain why this Court can supplant the Supreme Court's and the First Circuit's readings of the Treaties with Plaintiffs' own.

can support domestic enforcement of the Treaties, much less that an estoppel claim can be based solely on the isolated statement of a single government official over sixty years ago. *See* Op. at 40-43. In any event, Plaintiffs have failed to allege sufficiently the second prong of an estoppel claim: that they themselves relied on the alleged misrepresentation to their detriment. Plaintiffs' Opposition summarily asserts "the People of Puerto Rico . . . "hav[e] relied on the representations made regarding the exercise of self government." *Id.* at 42. But the Amended Complaint is devoid of any factual allegations supporting this statement, and accordingly, Plaintiffs cannot demonstrate that any such reliance occurred.

Plaintiffs' arguments with respect to the covenant of good faith and fair dealing and the abuse-of-rights doctrine suffer from still greater defects. Plaintiffs cite no law for the proposition the covenant of good faith and fair dealing requires the Treaties be enforceable in domestic courts. Plaintiffs likewise provide no authority to support the viability of claims premised on the abuse-of-rights doctrine in Puerto Rico or United States federal courts, let alone as a means to enforce international law domestically. Indeed, at least one other court has held that "abuse of rights" is not "a recognized doctrine in the United States." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 190 F. Supp. 2d 936, 955 (S.D. Tex. 2001) ("Pertamina falls far short of meeting its burden to show that the 'abuse of rights' doctrine is well-defined and dominant in United States law.").

Because Plaintiffs have not shown the Treaties are self-executing or that Congress has passed implementing legislation, Plaintiffs cannot demonstrate the Treaties create binding law. *See* Mot. at 17-19.

15

**V.     PLAINTIFFS DO NOT SHOW THE AMENDED COMPLAINT ALLEGES
FACTS SUFFICIENT TO STATE A CLAIM UNDER THE DECLARATION OF
INDEPENDENCE OR UNDER THE FIRST, FIFTH, OR FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION (CAUSES OF
ACTION 2 AND 3).**

**A.     Plaintiffs' Arguments the Declaration of Independence Can Serve as the
Basis for a Claim Are Unavailing.**

Plaintiffs argue the Declaration of Independence can form the basis for a claim because it

has been used as "a source of historical reference . . . to interpret the Constitution." Op. at 11-12.

As support for this view, Plaintiffs cite to a number of cases in which courts have referred to the

Declaration of Independence when interpreting the Constitution.  Plaintiffs' argument misses the

point.

It is irrelevant that courts have used the Declaration of Independence to interpret the

Constitution.  None of the cases cited by Plaintiffs demonstrate that a cause of action premised on

a violation of the Declaration of Independence is viable, because none of these cases hold that the

Declaration of Independence is a legally operative document.  *Id.* at 12 n.46.  Nor do Plaintiffs

otherwise address or distinguish the cases cited by the Oversight Board standing for the proposition

that the Declaration of Independence cannot give rise to a cause of action.  *See* Mot. at 20.  The

First Cause of Action must be dismissed for failure to state a claim.

**B.     Plaintiffs' Assertions They Have Sufficiently Alleged a First Amendment
Violation Are Likewise Unavailing.**

Plaintiffs' Opposition argues that Congress's creation of the Oversight Board infringes

upon Plaintiffs' First Amendment rights because it was created without the participation of Puerto

Rico's residents, yet has the power to override Puerto Rico's elected officials.  Op. at 13-18.

Plaintiffs further argue that as a result of this First Amendment violation, Defendants bear the

16

burden of demonstrating there are no less onerous means than PROMESA to protect a substantial public interest. *Id.* at 15-16.

The burden-shifting Plaintiffs describe is irrelevant, because it applies only after a First Amendment violation has been established.  The Opposition otherwise does not address the Oversight Board's argument that Plaintiffs have not been deprived of their First Amendment right to vote because, under controlling First Circuit precedent, the inability of United States citizens residing in Puerto Rico to vote in federal elections does not violate the First Amendment. *See* Mot. at 19 n.10.  Because Plaintiffs' Opposition does not demonstrate they have alleged facts sufficient to state a claim for violation of their First Amendment rights, the burden-shifting analysis they point to is beside the point.

### C.     Plaintiffs Have Not Adequately Pled a Claim Under the Due Process or Equal Protection Clauses.

Plaintiffs argue they have sufficiently pled violations of the Due Process and Equal Protection Clauses because (1) the Oversight Board's imposition of fiscal plans and budgets has impacted Plaintiffs' salaries, pension benefits, employment conditions, essential services, and CBAs in violation of the Fifth Amendment's Due Process Clause (Op. at 20-24); (2) the unspecified rights of bondholders who are residents of Puerto Rico, such as Pinto-Lugo, are infringed insofar as the Oversight Board can restructure Commonwealth debt without the participation of Puerto Rico residents (*id.* at 20-21); and (3) the Oversight Board violates the separation-of-powers doctrine and is not accountable to Commonwealth residents, in violation of Plaintiffs' rights under the Due Process and Equal Protection Clauses (*id.* at 24-26).  None of these arguments respond to the points and authorities raised in the Oversight Board's Motion to Dismiss. *See* Mot. at 20-23.

17

The Opposition states—without explanation—that the Oversight Board's argument that Plaintiffs failed to state a due process claim "is not correct and that argument has been duly addressed in this Memorandum."  Op. at 66.  In support of this conclusory assertion, Plaintiffs make the circular argument that "each time a deprivation of rights of the Plaintiffs takes place . . . they are deprived of their rights in violation of their due process rights, as set forth in the Fifth of the Constitution [sic]."  *Id.* at 23.  But the Opposition does not identify particular factual allegations in the Amended Complaint that specify the protected property interests of which Plaintiffs were allegedly deprived, explain what process they should have received but did not, or identify particular actions by the Oversight Board that deprived them of those protected property interests. *See* Mot. at 20-22.  Without such specific allegations, Plaintiffs' procedural due process claim fails.  The Opposition likewise does not point to factual allegations in the Amended Complaint that identify specific decisions made by the Oversight Board that have harmed Plaintiffs, much less any actions that "shock the conscience."  *See id.* at 22.  Without such specific allegations, Plaintiffs' substantive due process claim also fails.

Plaintiffs' equal protection arguments are also unavailing.  Plaintiffs allege their claim is based upon the differential treatment of residents of Puerto Rico as compared with residents of the mainland United States.  *See* Op. at 66.  But the Opposition still does not explain how either PROMESA or the Oversight Board classifies groups or individuals, much less how such classifications are suspect or impact fundamental rights, as is required to establish an equal protection claim.  *See* Mot. at 22-23.  Without such specific factual allegations, Plaintiffs' equal protection claim likewise fails.

## VI.    PLAINTIFFS' ATTEMPTS TO DEMONSTRATE THE AMENDED COMPLAINT STATES A CLAIM BASED ON A CONFLICT OF INTEREST OR A DUTY TO AUDIT PUERTO RICO'S DEBT FAIL.

### A.    Plaintiffs Have Not Alleged a Conflict of Interest.

In responding to the Oversight Board's arguments regarding the Fourth Cause of Action's request that José Ramón González and Carlos García be removed from the Oversight Board, Plaintiffs' Opposition merely reiterates the allegations in the Amended Complaint: according to Plaintiffs, because Mr. González and Mr. García were affiliated with the Government Development Bank and with Santander, their "participation in the Title III process" presents an "appearance of impropriety," and their failure to "recuse" themselves violates the due process of law. Op. at 67.   As support for that assertion, Plaintiffs rely on a single additional case, *Caperton*, 556 U.S. at 868, for the proposition that the mere appearance of impropriety results in a violation of the due process of law.  Plaintiffs do not otherwise substantively respond to the Oversight Board's argument that under PROMESA § 101(e)(5)(B), Oversight Board members may only be removed by the President for cause and that this Court therefore lacks subject-matter jurisdiction to entertain this claim.[6]

Plaintiffs' reliance on *Caperton* is unavailing because it does not support Plaintiffs' argument that the appearance of impropriety alone constitutes a due process violation.  Even more fundamentally, Plaintiffs fail in identifying any appearance of impropriety.  That two Oversight Board members have actual knowledge of the workings of the Government Development Bank

---

[6] Although Plaintiffs assert that their "right to make that constitutional claim has been covered herein," the Opposition nowhere directly addresses the Oversight Board's argument regarding the effect of PROMESA § 101(e)(5)(B).  Op. at 67.

shows they have valuable knowledge.  That is not an impropriety or an appearance of it.  There is no suggestion or basis to infer that either person did anything other than work hard for Puerto Rico. In *Caperton*, Justice Brent Benjamin of the West Virginia Supreme Court failed to recuse himself despite an apparent conflict of interest, resulting in a violation of Caperton's due process rights. The justice had been the beneficiary of significant campaign contributions—contributions totaling several times the amount of money spent by the justice's own campaign committee—by the chairman, chief executive officer, and president of A. T. Massey Coal, the defendant in *Caperton*. *Id.* at 873.  Under these "exceptional" circumstances, the Supreme Court determined that, in light of the "significant and disproportionate influence" Massey's chairman had "in placing Justice Benjamin on the case," "the probability of actual bias rises to an unconstitutional level."  *Id.* at 884, 886-87.

Plaintiffs have not explained how the facts alleged in the Amended Complaint even approach the unusual circumstances before the court in *Caperton*.  The sole factual allegations on which Plaintiffs rely are that Mr. González and Mr. García "were Presidents of the Government Development Bank of Puerto Rico and were also part of the top management of Santander."  Op. at 67.  Plaintiffs point to no facts (because there are none) demonstrating that, as in *Caperton*, either Mr. González or Mr. García was the beneficiary of significant financial contributions designed to influence their decision-making as members of the Oversight Board.  In the absence of such allegations, Plaintiffs cannot allege facts sufficient to show that the members' past affiliations with either the Government Development Bank or Santander rise to the level of a due process violation.

Accordingly, the Fourth Cause of Action should be dismissed for lack of subject-matter jurisdiction or for failure to state a claim.

### B.  Plaintiffs Likewise Have Not Alleged a Duty to Conduct an Audit.

With respect to the Fourth Cause of Action's request for an order staying all fiscal plans and any negotiations of the public debt until a forensic audit of the debt is undertaken, Plaintiffs concede that "PROMESA does not require the [Oversight Board] to conduct such an audit." *Id.* Instead, Plaintiffs contend the Oversight Board has a duty to conduct such a forensic audit because the Oversight Board's representation of the Commonwealth in Title III means it has a "fiduciary duty," and because of certain alleged "admissions" made by former Commonwealth Governors Ricardo Rosselló Nevares and Luis Fortuño-Burset that fraud and inflated credit ratings contributed to Puerto Rico's debt. *Id.* at 68-69.

Plaintiffs' Opposition largely copies the allegations made in their Amended Complaint. They do not address the Oversight Board's argument that its representation of the Commonwealth in Title III does not create a fiduciary duty that would require it to conduct a forensic audit. *See* Mot. at 30 n.15. Indeed, Plaintiffs admit that—contrary to the allegations made in their Amended Complaint—PROMESA itself imposes no duty to audit the Commonwealth debt and that the Oversight Board has already retained an independent investigator to conduct a report. Op. at 67. Conceding the argument, Plaintiffs instead quibble over whether the independent investigator conducted a forensic audit or a mere investigation, even though, as Plaintiffs acknowledge, the Oversight Board was not required to conduct either an audit or an investigation in the first place. *Id.* at 67-68. Plaintiffs also reference numerous statements by prior governors of Puerto Rico which, according to Plaintiffs, admit that the Commonwealth's debt was the "product of a

21

fraudulent scheme." *Id.* at 68.  Former-Governor Rosselló Nevares, according to Plaintiffs, alleged that the public debt of Puerto Rico was "the product of a 'Ponzi Scheme'", while former-Governor Fortuño-Burset allegedly stated that the credit rating agencies had "reported an improved level in the credit rating of Puerto Rico" during the fiscal crisis.  *Id.*  Nowhere, however, do Plaintiffs explain why those statements have any bearing on the independent investigation that was conducted.  Plaintiffs rely on the bald assertion that, in light of those statements, it is "unconscionable and insulting" to argue the Oversight Board "is not required to undertake a forensic audit of the debt."  *Id.*  But Plaintiffs cite no factual or legal authority to support this assertion.

Otherwise, Plaintiffs reiterate the allegations in their Amended Complaint that the scope of the investigation was, in Plaintiffs' eyes, insufficiently broad and transparent.  But Plaintiffs nowhere articulate what additional benefits would be obtained by the "audit" Plaintiffs request. *See id.* at 27-30.  Plaintiffs also do not address the Oversight Board's arguments regarding Plaintiffs' claim that the failure to conduct a forensic audit violates their due process rights.  *See id.* at 69.  As with Plaintiffs' other due process claims, Plaintiffs fail to identify specific factual allegations in the Amended Complaint that articulate a protected property interest of which they have been deprived based on actions taken by the Oversight Board (as required for a procedural due process claim) or conscience-shocking actions attributable to the Oversight Board (as required for a substantive due process claim).  *See* Mot. at 30-31; *supra*, § V.C.

Because Plaintiffs' Opposition does not explain why, in light of the deficiencies identified by the Oversight Board, its Fourth Cause of Action states a claim, the Fourth Cause of Action must be dismissed.

22

**VII.   PLAINTIFFS FAIL TO SHOW THE SIXTH CAUSE OF ACTION SHOULD NOT
BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION OR
FAILURE TO STATE A CLAIM.**

Plaintiffs' Opposition principally argues the Oversight Board must ensure that PREPA and

UPR receive adequate funding because they are essential services and, pursuant to PROMESA

§ 201, the Oversight Board may only approve a fiscal plan if it ensures the funding of essential

services.  Plaintiffs' Opposition further contends the Oversight Board and the Commonwealth

cannot dispose of PREPA's assets because (1) if the Court determines that PROMESA is

unconstitutional, then the Oversight Board's actions with regard to PREPA are null and void; (2)

the Bankruptcy Code does not preempt Plaintiffs' constitutional challenges; and (3) Plaintiffs'

claim against the Oversight Board with respect to the disposition of PREPA's assets ripened once

the Oversight Board and the Commonwealth notified the public that they intend to privatize assets

of PREPA.  *See* Op. at 70-71.  All of these arguments, which again largely repeat assertions made

in Plaintiffs' Amended Complaint, lack merit.

Plaintiffs' principal argument against dismissal—that the Sixth Cause of Action requires

the Oversight Board to adequately fund PREPA and UPR because they are "essential services"

whose funding must be ensured for a fiscal plan to comply with PROMESA § 201—ignores this

Court's orders regarding PROMESA § 106(e).  This Court lacks subject-matter jurisdiction over

any claims challenging either PREPA's or UPR's certified fiscal plans.  Because Plaintiffs assert

the Oversight Board's certified fiscal plans have "failed" to ensure either PREPA or UPR are

properly funded, Plaintiffs' Sixth Cause of Action falls squarely within § 106(e)'s prohibition on

claims challenging certification determinations.  *See Ambac Assurance Corp. v. Commonwealth

of Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 297 F. Supp. 3d 269, 284 (D.P.R.

23

2018).  Plaintiffs ignore that Congress granted the Oversight Board extraordinary power over certified fiscal plans precisely to insulate the Oversight Board from outside influences Plaintiffs are attempting to wield.

Plaintiffs' remaining arguments likewise fail as they only summarily address, if at all, the arguments raised by the Oversight Board.  First, as shown above, Plaintiffs' allegations regarding the constitutionality of PROMESA fail.  *See supra,* §§ III-V.  Second, Plaintiffs do not address the law and legal reasoning the Oversight Board presented in its Motion to Dismiss demonstrating Bankruptcy Code § 1123(a)(5) (incorporated by PROMESA § 301(a)), which authorizes reorganization plans to include asset sales, preempts inconsistent territorial law.  *See* Mot. at 32-33.  Instead, Plaintiffs simply assert, without citation, their "claims are not preempted."  Op. at 70.  This unsupported assertion is insufficient to show Plaintiffs' Sixth Cause of Action states a claim.[7]

Third, Plaintiffs assert their claim became ripe once the "intentions of the Board" to "dispos[e] of PREPA and its assets" became public.  *Id.* at 71.  But as the Oversight Board explained in its Motion to Dismiss, the "inten[t]" to "pursue the sale and/or privatization" of PREPA is insufficient to state a justiciable claim, because the details of any such plan remain undetermined.  Mot. at 33-34.  Because Plaintiffs' Opposition does not explain how the mere "inten[t]" to privatize PREPA results in any concrete, cognizable harms to Plaintiffs which require

---

[7] Plaintiffs also argue that under the Puerto Rico Constitution, the Commonwealth must conserve energy for the benefit of the community.  In making this argument, Plaintiffs ignore the Oversight Board's argument that the Puerto Rico Constitution does not provide a private right of action to vindicate an alleged violation of Article VI, § 19.  *See* Mot. at 36 n.18, 19.  For that reason as well, the Sixth Cause of Action must be dismissed.

24

the Court's immediate intervention, Plaintiffs have not demonstrated the Amended Complaint currently states a ripe claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss should be granted.

Dated: March 18, 2019
San Juan, Puerto Rico

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com
          ubaldo.fernandez@oneillborges.com


/s/ Martin J. Bienenstock
Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner  (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Chantel L. Febus (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
           sratner@proskauer.com
           tmungovan@proskauer.com
           cfebus@proskauer.com

*Attorneys for The Financial Oversight and*
*Management Board for Puerto Rico*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
